IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ERICKY ARNEZZ BOGUES #327-505 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. CCB-11-463 |
| | | |
| SGT. GEORGE McALPINE | * | |
| COUNSELOR LAURA MOULDEN | | |
| OFFICER SHANE LARUE | * | |
| SGT. JAMES SMITH[1] | | |
| LT. JASON HARBAUGH | * | |
| OFFICER ERIK SHOEMAKER | | |
| CORRECTIONAL MEDICAL SERVICES, | * | |
| INC. | | |
| LISA SCHINDLER, P.A. | * | |
| SHERRI BARNES | | |
| Defendants. | * | |

## MEMORANDUM

**I.  Procedural History**

This 42 U.S.C. § 1983 prisoner civil rights action filed on February 17, 2011, seeks declaratory relief and damages for two alleged assaults by corrections staff and poor care from prison health care providers for a knee injury allegedly exacerbated by the assaults. Bogues names as medical defendants the contractual health care provider, Correctional Medical Services, Inc. ("CMS") and CMS personnel Lisa Schindler (a physician's assistant) and Sherri Barnes (an x-ray technician) (hereinafter the "Medical Defendants"). Defendants have filed dispositive motions.[2] ECF No. 22 and 23. Bogues has filed a motion for summary judgment (ECF No. 30) as well as material opposing defendants' motions.[3] ECF Nos. 25, 31 and 36. A hearing is not

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names. Sergeant James Smith is the proper correctional employee involved in the December 16, 2010 incident; his name will be substituted for that of Case Manager J. Smith. *See* ECF No. 23 at 1 n. 1 and Exhibit 3 at 5.

[2] On July 19, 2011, Bogues indicated he had not yet viewed the video recordings provided by the correctional defendants in support of their dispositive motion. ECF No. 26. The court notes that counsel for the correctional defendants contacted prison personnel on July 14, 2011, to provide Bogues an opportunity to view the videos. ECF No. 23, Exhibit 15. The court assumes a viewing was scheduled and the issue has been resolved.

[3] Bogues' request to amend the complaint to include a claim about an October 18, 2011, incident involving a fellow prisoner and a claim concerning four days of missed food and medication during an October "staff alert" incident (ECF No. 37) and motion for injunctive relief concerning his placement on "staff alert" (ECF Nos. 38 and 39) are outside the context of this lawsuit and shall be denied.

needed to resolve the constitutional issues presented. *See* Local Rule 105.6. (D. Md. 2011). For reasons which follow, defendants' motions shall be granted.

## II. Standard of Review

### A. Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (internal quotation marks and citations omitted). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id.* at 557-58 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). "Threadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *Takacs v. Fiore*, 473 F.Supp.2d 647, 651 (D. Md. 2007).

### B. Motion for Summary Judgment

Fed. R. Civ. P. 56(a) provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

C. **Excessive Use of Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citations omitted). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Significant injury is not a threshold requirement for stating a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175, 1178 (2010). The extent of injury incurred is one factor indicative of the amount of force applied and whether or not the force used was necessary in a particular situation. *Id*. But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 1179.

D. **Eighth Amendment Right to Medical Care**

In alleging a denial of his Eighth Amendment right to necessary medical care, Bogues must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, Bogues must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of defendants. *See*

3

*Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Quinones*, 145 F.3d at 167.

### E.  **Administrative Exhaustion**

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Bogues's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that the correctional defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"), *abrogated on other grounds by Woodford*

4

*v. Ngo*, 548 U.S. 81 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the Bureau of Prison's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the Administrative Remedy Program ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Division of Correction Directive 185-002 § VI (L-N) (copy attached); *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.

## III. Analysis

### A. Correctional Defendants – The December 16, 2010 Incident

Defendants' version of events is supported by a video of this incident, provided as an attachment to ECF No. 23, Exhibit 14. On December 16, 2010, Bogues attended a Behavior Management Plan ("BMP") review.[4] Because he had incurred a serious infraction since his last review, his privilege level was reduced from Level 4 back to Entry Level 1. Bogues became angry and cursed defendant Moulden, who was conducting the review. Due to this behavior, the review was concluded and Bogues was ordered to leave the room. ECF No. 23, Ex. 2 at 18-28 and Exs. 5-8, 10. Bogues stated he would not leave without first speaking with defendant Harbaugh. Defendant McAlpine left the room and returned with Harbaugh. In the interim, Bogues continued to move in his chair in an agitated manner and defendant Shoemaker

---

[4] NBCI, a maximum security prison, has developed a BMP to allow prisoners with poor adjustment histories an opportunity to avoid or reduce segregation sentences and earn progressively greater privileges by demonstrating consistent good behavior. ECF No. 23, Ex. 4 at 21. Bogues, who is serving a lengthy sentence for violent crime and has received multiple disciplinary segregation sentences, has participated in the program on several occasions. *Id.*; *see also* ECF No. 23, Ex. 2 at 44-49.

5

continued without success in ordering Bogues to leave the room. *Id*., Ex. 7. Shoemaker grabbed Bogues' arm in an attempt to remove him from the room. *Id*. Exs 7, 14. Bogues pulled away from Shoemaker, partially rose from his chair, knocking it over, and fell to the floor. At the time, Bogues' wrists were cuffed to his crutches; during the struggle he swung a crutch in Shoemaker's direction. Other officers, including defendants LaRue, Harbaugh and McAlpine, surrounded Bogues.[5] Harbaugh held both of Bogues' arms and calmed him after several minutes. Bogues then stood up with Harbaugh's assistance and was seated in a wheelchair, removed from the BMP room, and escorted to the Housing Unit 1 medical room for evaluation of his surgical site. *Id*., Exs. 5-10, 14.

Defendants claim that Bogues failed to exhaust administrative remedies regarding this incident. ECF No. 23 at 7-8. Because the incident involved the use of force, it was investigated by the Internal Investigation Unit and thus was not subject to the ARP process. *Id.*, Ex. 4 at 23. Thus, defendants' invocation of the affirmative defense of failure to exhaust administrative remedies fails with regard to the December 16, 2011, incident. Nonetheless, the evidence, including the video, supports defendants' assertion that excessive force was not employed. The Correctional Defendants are entitled to summary judgment on this claim.

B. Correctional Defendants – The January 18, 2011 Incident

The incident began when Bogues, whose wrists were handcuffed to his crutches, spoke with Harbaugh, McAlpine and defendant Smith, indicating he wished to pursue criminal charges against certain officers following the December 16, 2010, incident. *Id*., Exs. 5-6, 9; *see also* ECF No. 1 at 6. At the end of the discussion Bogues refused direct orders to return to his cell. ECF No. 23, Exs. 3, 5-6, 9. Smith took hold of Bogues' right arm and Harbaugh took hold of the left arm as both men tried to get Bogues to stand. *Id*., Exs. 3, 5-9, 14. Bogues swung his crutches at the officers. Harbaugh ordered Bogues to cease resisting, to no avail, at which time McAlpine shot two bursts of pepper spray in Bogues' face. *Id*. The incident ended and Bogues was brought to the medical department for treatment of pepper spray exposure. *Id*. The incident is captured on the video. ECF No. 23, Ex. 14.

---

[5] Prisoner Brian Medlin provides an affidavit indicating he witnessed the "assault" on Bogues while seated outside the BMP interview room awaiting his review. He further states the "assault" ended when Harbaugh entered the room. ECF No. 36 at 2. Medlin's version of events is contradicted by the video of the incident. The video camera was inside the room; Medlin was not.

Defendants assert that Bogues failed to complete ARP review of his claim of excessive use of force surrounding this incident.[6] Bogues indicates he did file an ARP to the Warden and thereafter filed an appeal with Commissioner of Correction. ECF No. 30 at 18. The appeal, however, does not pertain to the alleged assault by Harbaugh, Smith and McAlpine. Furthermore, there is no demonstration that Bogues then sought review of the denial of ARP relief with the Inmate Grievance Office. Bogues appears to have failed to comply with the exhaustion requirement, and defendants Harbaugh, Smith and McAlpine are entitled to dismissal from his claim of excessive use of force on January 18, 2011.[7]

C. Medical Defendant Correctional Medical Services, Inc.

To the extent the complaint names CMS in the alleged denial of medical care, this claim is based solely upon vicarious liability. The law in this circuit is clear; the doctrine of *respondeat superior* does not apply to 42 U.S.C. § 1983 claims. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982). The motion to dismiss filed on behalf of CMS shall be granted.

D. Medical Defendants Schindler and Barnes

Bogues' history of knee problems, recently examined by this court, is relevant here. *See Bogues v. CMS, Inc.,* 2011 WL 2516400 (D. Md. June 21, 2011). Bogues, who had sustained a gunshot wound to the left knee prior to incarceration, entered the Division of Correction ("DOC") on April 29, 2005.[8] Following classification, he was transferred to Roxbury Correctional Institution ("RCI") on May 10, 2005, where he remained until his transfer to North Branch Correctional Institution ("NBCI") on June 8, 2009. *Id.* at *3.

On January 3, 2010, Bogues submitted a sick call request complaining of knee pain.

---

[6] To the extent that Bogues now contends his due process rights were violated with regard to the disciplinary hearings conducted in connection with the December 16, 2010, and/or January 18, 2011, incidents, *see* ECF No. 30 at 7, this claim is not before the court at this time.

[7] Even if administrative exhaustion were completed, the claim fails, based on the video evidence that supports the officers' version of the evident.

[8] The knee fracture was surgically repaired in 2006. *Id.* at 6.

When conservative treatment failed, a request for outside consultation was made. On June 25, 2010, Ashok Krishnaswamy, M.D., an orthopedic surgeon at Bon Secours Hospital, examined Bogues and recommended he have surgery to remove the screws and wires previously used to repair his knee. These devices would be replaced with tension band wiring of the patella (knee cap). *Id*. at *4. Approval for surgery occurred on November 23, 2010. *Id*.

On December 7, 2010, Bogues underwent exploratory surgery of the left knee. Broken wires and screws were removed from the patella and a "reduction and fixation" of the patella was achieved using tension band wiring. A long leg split was applied to prevent bending of the knee. Bogues was discharged from Bon Secours Hospital and admitted to the infirmary at Metropolitan Transition Center overnight. He was able to walk using crutches and was told not to change the dressing on the knee. *Id*. On December 8, 2010, Bogues was transferred to the infirmary at Western Correctional Institution for postoperative recovery. On December 13, 2010, Bogues was discharged from the infirmary to return to his housing unit at NBCI, with orders to abstain from work and recreation. He was placed on feed-in-cell status, assigned to a bottom bunk for 60 days, and directed to use crutches when leaving his cell for the next 60 days. *Id.* at *5.

Back at NBCI, Bogues complained on December 16, 2010, that "the doctor in NBCI won't give me [antibiotics.]" *Id*. at *5. On December 17, 2010, PA Schindler examined Bogues who complained that his knee went "out of place" following an altercation with a correctional officer and a separate incident resulting in a fall. *Id*., Exhibit B at 74-76 and 79. An x-ray was immediately taken and read by Dr. Ava Joubert. It revealed one screw in the knee might be out of place. Bogues was given Motrin for pain and told to continue to use his crutches. The next day, defendant Schindler submitted a consultation request for Bogues to see the orthopedic surgeon. ECF No. 22, Ex. A ¶ 8.

At the January 11, 2011 follow-up with the orthopedic surgeon, Dr. Krishnaswany determined the x-ray showed displacement of the fracture fragments and wires in the left knee. That same day, Bogues underwent a revision of the reduction of the patella fracture. 2011 WL 2516400 at *5. His post-operative recovery followed a similar course to that provided following the December 2010 surgery. As of January 31, 2011, Bogues indicated his knee "is fine." *Id*.

Bogues has failed to come forward with opposition materials refuting the Medical

Defendants' affirmations.  His dissatisfaction with the treatment provided to date amounts to nothing more than a disagreement between medical staff and an inmate as to a course of treatment, and does not rise to a constitutional injury.  *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985).  Given the objective findings regarding Bogues's knee condition and the response by medical personnel to his condition, Bogues has failed to show a genuine issue of material fact as to his entitlement to money damages or other relief.

For the aforementioned reasons, the dispositive motions filed by defendants will be granted and Bogues' dispositive and non-dispositive motions denied. A separate order follows.

Date: November 28, 2011        /s/
                               Catherine C. Blake
                               United States District Judge